UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CONVERTING ALTERNATIVES
INTERNATIONAL, LLC,

        Plaintiff,

                                  CASE NO. 16-CV-13772
    v.                          HON. GEORGE CARAM STEEH

VAC PAC, INC.,

        Defendant.

                              /

**OPINION AND ORDER GRANTING**
**DEFENDANT'S MOTION TO DISMISS (DOC. #3)**
**AND DISMISSING CASE WITHOUT PREJUDICE**

This is a breach of contract case in which defendant Vac Pac, Inc.

("Vac Pac") contracted with plaintiff Converting Alternatives International,

LLC ("CAI") to design and build an upgrade to one of Vac Pac's machines.

Vac Pac is a Maryland corporation and CAI is a Michigan company.   CAI

filed its action invoking this court's diversity jurisdiction pursuant to 28 U.S.C.

§ 1332.   The matter is before the court on Vac Pac's motion to dismiss for

lack of personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2).   The

motion has been fully briefed and a hearing was held on March 13, 2017.

Because exercising personal jurisdiction over Vac Pac would offend

traditional notions of fair play and substantial justice, Vac Pac's motion is GRANTED as set forth below.

## BACKGROUND

CAI, a Michigan company located in Lake Orion, Michigan, is in the business of facilitating the design and fabrication to convert industrial machinery.   Vac Pac, a Maryland corporation headquartered in Baltimore, is in the business of producing packaging for the food industry, particularly cooking bags.   Vac Pac does not own property in Michigan, is not licensed to do business in Michigan, does not conduct any business activities in Michigan, and does have a registered agent for the service of process in Michigan.   Vac Pac has no employees in Michigan and has never advertised in Michigan.

According to CAI, in July 2014, Matt Tary, the President of Vac Pac, made an unsolicited telephone call to Tom Williams, President of CAI. Williams' Decl. ¶¶ 4-6, 35-36.   Mr. Williams asserts that during this phone call, Mr. Tary inquired whether CAI would be interested in quoting the design and build of a machine to make cooking bags.   *Id.*   Mr. Tary contacted CAI on the recommendation of Ken Deneka of Deneka Printing Systems, Inc. *Id.* Mr. Deneka even called Mr. Williams in advance to let him know that Mr.

Tary would be calling to see if CAI was interested in doing business with Vac Pac.   *Id.*

In its motion to dismiss, Vac Pac tells a contrasting version of the first contact between the parties.   On July 19, 2014, Mr. Deneka emailed Mr. Williams with the details of the project at issue and Mr. Tary's contact information.   Deneka Affidavit, ¶ 8.   On July 21, 2014, Mr. Deneka suggested that Mr. Williams contact Mr. Tary, provided his phone number and stated, "this is the easiest way to reach him."   Deneka Affidavit, Exh. 1-A.   Mr. Williams responded, "Ken, I'm in Florida on a sales call.   I will not be back until Tuesday night. . . I will call that gentleman on Wednesday."   *Id.* Mr. Deneka emailed Mr. Tary on July 21, 2014 to inform him that Mr. Williams would be calling him.   On Wednesday, July 23, 2014, Mr. Williams did call Mr. Tary.   Tary Suppl. Affidavit, ¶ 4.   Mr. Williams offered to fly to Maryland to meet Mr. Tary in person, and actually did so on the following Monday.   *Id.*, ¶ 6, Exh. B.

While each side in this litigation accuses the other side of providing a false account regarding the first contact that took place, Vac Pac's account is supported by the affidavit of non-party Mr. Deneka and emails between the various parties.

It is undisputed that CAI personnel visited Vac Pac's facility in Maryland in July, August and September of 2014 to observe Vac Pac's production lines and prepare a quote.   On December 9, 2014, CAI delivered Quote #1658 to Vac Pac to design and build a bag delivery section and a printing section to modify existing equipment.   The printing section upgrades required the use of existing Vac Pac equipment, which was in use at Vac Pac's Maryland location.   Once CAI indicated the bag making section was complete, it would be shipped from Michigan to Maryland to be joined to the donor printing section, at which time the printing section upgrades could be performed.

The total cost quoted by CAI was $818,655.   The terms of payment in the Quote were "30% upon receipt of order, 30% prior to shipment, 40% upon completion of start-up and customer acceptance."   Vac Pac financed the work and services to be performed under Quote #1658 through FSG Capital, Inc. ("FSG"), a lender based in Maryland.   CAI entered into a Vendor Indemnification Agreement, where it agreed to indemnify, defend and hold FSG harmless against any losses, liabilities, damages, costs and expenses arising directly or indirectly out of any claim by CAI, Vac Pac or any other party for the cost of the equipment or the funds advanced by FSG. Vendor Indemnification Agreement, ¶ 3.   The Vendor Indemnification

Agreement provides that it was executed in Maryland, shall be governed by Maryland law, and shall be construed and enforced in accordance with Maryland law.   Vendor Indemnification Agreement ¶ 6.

On January 2, 2015, the first 30% payment in the amount of $245,596.50 was delivered to CAI in Michigan.   The structure of the press was built in Romeo, Michigan at the facilities of a CAI subcontractor.   It was then moved to another CAI subcontractor in Oxford, Michigan on February 28, 2015.   Representatives from Vac Pac travelled to Michigan on March 17, 2015 to inspect the press.   They requested that several changes be made during this inspection, as well as requesting the addition of a stacker which was not part of the original quote.   A second was done by Vac Pac representatives in Michigan on July 20, 2015.   At that time, the Vac Pac representatives accepted the machine and instructed CAI to deliver it to Vac Pac's facilities in Maryland.

On July 30, 2015 the second 30% payment in the amount of $245,596.50 was delivered to CAI in Michigan.   On September 10, 2015, the press was shipped from Michigan to Vac Pac's facility in Maryland.   CAI installed the press and made various adjustments to optimize the operation of the press.   This included providing additional components for the press after it was installed.

In January 2016, the press had yet to produce any acceptable product at any reasonable speed, so Vac Pac instructed CAI to stop work on the press and denied CAI further access to the press.   CAI brought this lawsuit seeking to recover the remaining balance due under the quote, plus $20,000 for the stacker, asserting claims for breach of contract, quantum meruit and unjust enrichment.

Vac Pac contends that in its efforts to work on the press in Maryland, CAI caused further harm and delay, breaking two critical bearing blocks in the sealing unit which required custom manufacture and reinstallation.   Vac Pac claims to have suffered a loss of business due to the inability to produce products from the affected manufacturing line.   In addition, Vac Pac has spent money and 1,500 man hours of labor trying to put the machine into production.   It has engaged multiple third party contractors, many located in Maryland, to diagnose and repair issues left unaddressed by CAI.

FSG and Vac Pac filed a lawsuit against CAI in Maryland on December 21, 2016.   In that suit, Vac Pac alleges claims for breach of contract, breach of warranty, misrepresentation and fraudulent inducement.   FSG alleges a breach of the Vendor Indemnification Agreement.   CAI did not object to personal jurisdiction over it in Maryland, but filed a motion to transfer venue to Michigan because this lawsuit was filed first and is pending in Michigan.

## STANDARD OF REVIEW

The burden is on the plaintiff to establish that personal jurisdiction exists. *Bird v. Parsons*, 289 F.3d 856, 871 (6th Cir. 2002). Because the court is deciding the issue of personal jurisdiction without first holding an evidentiary hearing, the facts are construed in the light most favorable to the plaintiff, the nonmoving party. *Neogen Corp. v. Neo Gen Screening, Inc.*, 282 F.3d 883, 887 (6th Cir. 2002). The plaintiff "need only make a prima facie showing of jurisdiction." *Id.* (citation omitted). The plaintiff can meet this burden by "'establishing with reasonable particularity sufficient contacts between [the defendant] and the forum state to support jurisdiction.' " *Id.* (quoting *Provident Nat'l Bank v. California Fed. Savings Loan Ass'n*, 819 F.2d 434, 437 (3d Cir. 1987)). Where the facts proffered by the defendant conflict with those offered by the plaintiff, the court disregards the defendant's facts for purposes of ruling on the motion. *Id.* In the face of a properly supported motion for dismissal, however, the plaintiff "may not stand on [its] pleadings but must, by affidavit or otherwise, set forth specific facts showing that the court has jurisdiction." *Theunissen v. Matthews*, 935 F.2d 1454, 1459 (6th Cir. 1991).

"If the written submissions raise disputed issues of fact or seem to require determinations of credibility, the court retains the power to order an

evidentiary hearing . . . and to order discovery of a scope broad enough to prepare the parties for that hearing." *Serras v. First Tennessee Bank Nat. Ass'n*, 875 F.2d 1212, 1214 (6th Cir. 1989) (citations omitted).   In such a case, the burden on the party asserting jurisdiction becomes the same standard that would apply if the matter were deferred to trial: the preponderance of the evidence.   *Welsh v. Gibbs,* 631 F.2d 436, 439 (6th Cir. 1980).   Furthermore, even if the court issues a pretrial order denying defendant's 12(b)(2) motion, the defendant may proceed to trial without waiving the defense.   *Serras*, 875 F.2d at 1214 (citation omitted).

## ANALYSIS

"A federal court's exercise of personal jurisdiction in a diversity of citizenship case must be both (1) authorized by the law of the state in which it sits, and (2) in accordance with the Due Process Clause of the Fourteenth Amendment."   *Neogen Corp.*, 282 F.3d at 888 (citing *Reynolds v. Int'l Amateur Athletic Fed'n*, 23 F.3d 1110, 1115 (6th Cir. 1994)).   Michigan's long-arm statute confers general jurisdiction over a corporation pursuant to Mich. Comp. Laws § 600.711 and limited jurisdiction pursuant to Mich. Comp. Laws § 600.715.   "Under Michigan's long-arm statute, the state's jurisdiction extends to the limits imposed by federal constitutional due process requirements and thus, the two questions become one."   *Mich.*

*Coalition of Radioactive Material Users, Inc. v. Griepentrog*, 954 F.2d 1174, 1176 (6th Cir. 1992).

## I.      Michigan Long-Arm Statute

### A.      General Jurisdiction

"Personal jurisdiction exists in two forms: 'general' or 'specific.' " *Cadle Co. v. Schlichtmann*, 123 F. App'x 675, 677 (6th Cir. 2005) (citing *Bird*, 289 F.3d at 873).   General jurisdiction "exists over a defendant when his 'contacts with the forum state are of such a continuous and systematic nature that the state may exercise personal jurisdiction over the defendant even if the action is unrelated to the defendant's contacts with the state.' " *Id.* (citation omitted).   CAI does not argue that Vac Pac is subject to general jurisdiction in Michigan.   Nor do the facts, when viewed in a light most favorable to CAI, establish that Vac Pac has "continuous and systematic" contacts with Michigan subjecting it to general jurisdiction.

### B. Specific Jurisdiction

Mich. Comp. Laws § 600.715 extends limited personal jurisdiction over a nonresident corporation in claims "arising out of the act or acts which create any of the following relationships," including: "[t]he transaction of any business within the state" under § 600.715(1).   The "transaction of any business" necessary for limited personal jurisdiction under § 600.715(1) is

established by "the slightest act of business in Michigan." *Lanier v. Am. Bd. of Endodontics,* 843 F.2d 901, 906 (6th Cir.1988) (citing *Sifers v. Horen,* 385 Mich. 195, 188 N.W.2d 623, 624 n. 2 (1971)).

Plaintiff CAI argues that it has presented a prima facie case that Vac Pac transacted business in Michigan when it reached out to CAI in Michigan to solicit business, entered a contract with CAI, communicated by telephone and email to CAI in Michigan, visited Michigan twice in connection with the transaction at issue, and sent two payments totaling more than $530,000 to Michigan.

The Sixth Circuit has held that an exchange of correspondence and telephone calls between a non-resident defendant and the plaintiff in Michigan, along with sending payments to Michigan, can be enough to satisfy limited personal jurisdiction for purposes of Michigan's long-arm statute.   *Id.* at 907-08.   However, Michigan's long-arm statute is subject to constitutional due process considerations, which the court discusses in the next section.

## II.    Due Process

The central inquiry in determining whether specific jurisdiction is authorized under the Due Process Clause is whether the defendant has sufficient "minimum contacts" with the state "such that the maintenance of

the suit does not offend 'traditional notions of fair play and substantial

justice.' " *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (citations

omitted).

To determine whether a defendant has sufficient minimum contacts

with the state, the Sixth Circuit applies a three-part test:

> First, the defendant must purposefully avail [itself] of the privilege
> of acting in the forum state or causing a consequence in the
> forum state.   Second, the cause of action must arise from the
> defendant's activities there.   Finally, the acts of the defendant or
> consequences caused by the defendant must have a substantial
> enough connection with the forum state to make the exercise of
> jurisdiction over the defendant reasonable.

*Southern Machine Co. v. Mohasco Indus., Inc.*, 401 F.2d 374, 381 (6th Cir.

1968).

### A. Purposeful Availment

In addressing the first factor, CAI argues that Pac Vac purposefully

availed itself of the privilege of doing business in Michigan by soliciting

business with an entity located in Michigan, communicating by telephone

and email with CAI in Michigan regarding the resulting contract, sending

money to CAI in Michigan, and traveling to Michigan in connection with the

project.

A defendant is considered to have purposefully availed itself of the

forum state where it "reaches out" to or otherwise solicits business from the

plaintiff.   *Alisoglu v. Central States Thermo King of Okla., Inc.*, 2012 WL 1666426, at *6 (E.D. Mich. May 11, 2012).   In this case, prior to any substantial discovery having been undertaken, the evidence supports Vac Pac's account that CAI solicited Vac Pac in Maryland.   There is no evidence, other than Mr. William's refuted affidavit, that Vac Pac did anything to "reach out" to or otherwise solicit business from CAI in Michigan.

Courts look to the quality of a non-resident defendant's contacts with the forum state in assessing purposeful availment.   One important aspect is whether the transaction at issue was isolated or was evidence of an ongoing relationship.   *See Kerry Steel, Inc. v. Paragon Indus.*, 106 F.3d 147, 151 (6th Cir. 1997).   In this case, the subject transaction was the only contract Vac Pac ever entered into with a Michigan resident.   In addition to likely being initiated by CAI, the contract was for a specific piece of equipment that would be delivered to Maryland to be integrated with existing equipment located in Maryland.   CAI points out that the contract at issue was more complicated than the purchase of a single item because it required installation and adjustments after it had been fabricated.   However, those continuing obligations were to be undertaken by CAI in Maryland and they do not increase Vac Pac's contacts with Michigan.

Another aspect of the defendant's contacts the court will consider is whether the non-resident undertook communication related to the contract. Calls and other forms of communication, standing alone, may be sufficient to confer jurisdiction on the foreign defendant where the calls form the basis of the breach.   *Neal v. Janssen*, 270 F.3d 328, 332 (6th Cir. 2001) (holding that sending fraudulent communications into a forum state constituted purposeful availment in fraud action); *Children's Legal Services, PLLC v. Shor Levin and Derita, PC*, 850 F.Supp.2d 673, 682 (E.D. Mich. 2012). Plaintiff's complaint is for breach of contract, quantum meruit and unjust enrichment based on the fact that Vac Pac owes CAI money.   This is not a case where a defendant's communications form the basis of the plaintiff's claims.   Furthermore, making payments in the forum state is an ancillary factor which does not provide the minimum contacts required by due process on its own. *See Kerry Steel*, 106 F.3d at 151; *Campell v. Bridgeview Marina*, 347 F.Supp.2d 458, 463 (E.D. Mich. 2004).

The facts of this case do not clearly support a finding that Vac Pac "purposefully availed" itself of the benefits, privileges or protections of conducting business in the State of Michigan.

**B. Relatedness**

Even assuming CAI established purposeful availment, "[t]o satisfy the 'arising from' prong of the *Southern Machine* test, the plaintiff must demonstrate a causal nexus between the defendant's contacts with the forum state and the plaintiff's alleged cause of action." *Beydoun v. Wataniya Rests. Holding, Q.S.C.*, 768 F.3d 499, 506–07 (6th Cir. 2014) (citation omitted).   In order for the cause of action to "arise from" the defendant's actions in the forum state, the operative facts of the controversy must be related to the defendant's contact with the state.   *Id.* at 507. "[T]he plaintiff's cause of action must be proximately caused by the defendant's contacts with the forum state."   *Id.* at 507–08.

Here, CAI alleges that Vac Pac failed to pay certain amounts owed under Quote #1658.   For jurisdictional purposes, a defendant's refusal to pay amounts owed under a contract takes place where the defendant resides.   *See Kerry Steel*, 106 F.3d at 152 ("We are not persuaded that Kerry Steel has shown that its cause of action arose from the defendant's activities in Michigan.   At its most basic level, the claim arose out of Paragon's failure to pay the full purchase price, based on the purported nonconformity of the goods with the specifications of the contract.   The refusal to pay occurred in Oklahoma"); *Five Brothers Mortgage Co. Svcs &*

*Securing, Inc. v. McCue Mortgage Co.*, 2017 WL 104539, at \*7 (Mich. Ct. App., January 10, 2017) (where plaintiff's cause of action arose from defendant's alleged failure to pay monies owed under the parties' contract, defendant's failure to pay occurred in Connecticut where defendant was located and conducted all of its business, rather than Michigan where plaintiff was awaiting payment).

CAI cannot demonstrate that its claims arise out of Vac Pac's activities in Michigan because Vac Pac's alleged failure to pay CAI occurred in Maryland, not in Michigan.

## C. Reasonableness

The last consideration is whether the court's exercise of jurisdiction over the Vac Pac would be reasonable.   This requires considering 1) the burden on the defendant, 2) the forum state's interest in adjudicating the dispute, 3) the plaintiff's interest in obtaining convenient and effective relief, 4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and 5) the shared interest of the several states in furthering fundamental substantive social policies.   *I.P. Enterprises Pension Fund v. Hatfield*, No. 06-11162, 2006 WL 2367357, at \*7 (E.D. Mich. Aug. 14, 2006) (citing *World-Wide Volkswagon Corp. v. Woodson*, 444 U.S. 286, 292 (1980)).

Vac Pac argues that the burden for it to litigate this case in Michigan would be substantial.   It contends that virtually all of the documents and equipment, and its third party witnesses, are located in Maryland.   In addition to the costs it has already incurred in attempting to get its machine into production, the cost of litigating in Michigan would be "prohibitive".   The court agrees that requiring Vac Pac to litigate in Michigan would be placing a substantial burden on it, especially given the tenuous connection formed between Vac Pac's activities and the State of Michigan.

Michigan's interest in this litigation is tenuous because ultimately the contract was for goods and services to be delivered to and permanently located in Maryland.   However, Michigan does have an interest in seeing that its residents get paid for work they perform pursuant to contracts. Ultimately, because defendant has limited contacts with Michigan, the burden placed on defendant outweighs plaintiff's and the forum state's interest.

While this lawsuit was filed first, the court still considers that the interests of judicial economy may favor litigating in Maryland given FSG and Vac Pac's lawsuit pending in that forum.   The claims brought by Vac Pac and FSG will involve the same evidence and witnesses as the instant dispute given that Vac Pac's breach of contract and warranty theories underlie its

- 16 -

refusal to pay CAI and that the Vendor Indemnification Agreement requires the execution of a final delivery certificate evidencing Vac Pac's unconditional acceptance of the equipment.

Where a plaintiff fails to establish purposeful availment, it is unnecessary to consider the remaining two elements, because failure to meet one element means that personal jurisdiction may not be invoked. *See, Inc. v. Imago Eyewear Pty, Ltd.*, 167 F. App'x 518, 523 (6th Cir. 2006) (citing *LAK, Inc. v. Deer Creek Enters.*, 885 F.2d 1293, 1303 (6th Cir. 1989). Nevertheless, as explained above, CAI has failed to establish any of the elements required to satisfy due process.   Therefore, the court cannot exercise personal jurisdiction over Vac Pac without offending traditional notions of fair play and substantial justice.   *Int'l Shoe,* 326 U.S. at 316.   The court will grant Vac Pac's motion to dismiss and dismiss the action without prejudice.   *See Intera Corp. v. Henderson*, 428 F.3d 605, 620–21 (6th Cir. 2005) (explaining that dismissal for lack of personal jurisdiction does not operate as adjudication on the merits, and, therefore, must be without prejudice).

## CONCLUSION

For the reasons stated above, defendant's motion to dismiss is GRANTED and this case is DISMISSED WITHOUT PREJUDICE.

- 18 -

IT IS SO ORDERED.

Dated:    March 28, 2017

s/George Caram Steeh
GEORGE CARAM STEEH
UNITED STATES DISTRICT JUDGE

---

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on
March 28, 2017, by electronic and/or ordinary mail.

s/Marcia Beauchemin
Deputy Clerk

---